## Ohio Valley Banking & Trust Company v. Wathen's Executors.

(Decided October 19, 1915.)

### Appeal from Henderson Circuit Court.

1. Banks and Banking—When Bank Liable' in Damages for Failure to Deliver Stock.—Where a certificate of stock was left by the owner in the possession of the bank, the bank should deliver it to the owner within a reasonable time after demand, and upon its failure to do this, it becomes liable to the owner for any damage he may have sustained on account of its conversion of the stock to its own use.

2. Sales—Personal Property—Time of Delivery.—Where bank stock was offered for sale at a public sale, time not being an essential part of the contract, the purchaser could be required to take the stock if tendered to him within a reasonable time after the sale.

MONTGOMERY MERRITT and YEAMAN & YEAMAN for appellant.

N. POWELL TAYLOR and S. V. DIXON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL.—Reversing.

This suit was brought by the executors of Mrs. A. J. Wathen to recover from the appellant bank $1,780, the alleged value of a certificate for ten shares of stock in the bank that it was charged the bank had converted to its own use and for this reason the executors could not deliver it to J. M. Baskett, to whom they had sold it for $1,780.

After the issues had been made up, the case was tried before a jury under an instruction telling the jury that they should find for the "plaintiff such an amount in damages as they believed from the evidence was the reasonable market value of the ten shares of stock in question at the time the plaintiffs demanded possession of the same." Under this instruction the jury found a verdict in favor of the plaintiffs for $1,780, and judgment went accordingly, and the bank appeals.

In 1907, Mrs. Wathen bought from the Planters State Bank ten shares of its capital stock of the par value of one hundred dollars per share. There was issued to her one certificate, serial number 275, for these shares of stock. Mrs. Wathen, as it appears, never had in her posssesion this certificate. It remained with the bank

from the time of her purchase until her death in 1913, although during this time she received the usual dividends on the stock.

In March, 1914, her executors had a sale of her personal effects, and offered for sale this stock, and it was bought by J. M. Baskett for $178 per share, or $1,780. On the day Baskett purchased the stock it was agreed between him and one of the executors that they should meet the next day at a designated place, when the certificate would be delivered. On the next day, before the appointed time for the delivery of the stock, the executor applied to the bank for the certificate and was informed by the acting cashier that he did not know where it was, and he told the executor to see Mr. Merritt, the president of the bank. The executor went to see Mr. Merritt, and, some time afterwards but on the same day, Mr. Merritt told him he could not find the certificate. Thereupon the executor notified Baskett what had happened and said to him he would have to wait a while until he could get the certificate.

It further appears that about ten days afterwards the certificate was found in the bank in the original certificate book. It had never been torn out of the book, and there was endorsed across the face of it in pencil the word "cancelled." A book in the bank also showed that this ten shares of stock had been transferred to Ingram Crockett, the cashier of the bank, on October 3, 1913, and on the same day another entry showed that Crockett had sold ten shares of bank stock to Amos Becker. When the certificate was found the executor was requested by the president to come and get it, but he said that Baskett would not take it and therefore declined to accept it.

The executor further testified that two or three days after the stock had been sold, Baskett told him to get this certificate and he would pay for it.

It might here be noticed that shortly before this sale the affairs of the bank were in an involved condition on account of some misconduct of the cashier, Ingram Crockett, and it is apparent that the condition of the bank had become pretty well known, although perhaps at that time it was not known to what extent the capital of the bank had been impaired and the value of the stock depreciated. But a few days after the sale it was known that the affairs of the bank were in a bad condition and

that the stock was not worth near so much as Baskett bid for it.

Baskett testified that he bid on the stock for himself and a Mr. Nichols, and that it was knocked off to him at $178 a share. That he knew at the time the stock could not be delivered. Asked to state for what purpose he bid $178, he said he had reason to believe that the stock could not be delivered, and bid on it to boost the stock of the bank. He further said that shortly after the sale, but on the same day, he told the executor he was ready to take the stock, and that if he could not get the identical stock he bought would not take any. He further said that he knew on the day of the sale, but before the sale, that the executor could not deliver to him the stock he bought, and that he bid on the stock because he believed it could not be delivered to him.

Mr. Merritt, the president of the bank, said that a few days after the executor asked him about this certificate he went to the bank and found it in the stock book with the word "cancelled" written in pencil across the face of it. That upon discovering that the certificate had been improperly cancelled, he erased, or had erased, the word cancelled written in pencil and told the executor that the stock was there subject to his order, but that the executor declined to take it because Baskett would not have it.

Under this evidence it is not disputed that if the certificate could have been delivered to Baskett on the day of the sale, or the following day, he would have taken it, or else could have been compelled to take it or pay such sum in damages as the estate suffered by reason of his failure to execute his bid. This being so, the remaining question is, did the delay of about ten days that elapsed between the day of the sale and the date when the bank offered to deliver to the executor the certificate for the ten shares issued to Mrs. Wathen have the effect of releasing Baskett from liability on his bid, and the further effect of charging the bank with the value of the stock as though it had converted it?

Baskett is not a party to this appeal, and therefore what may be said as to him for the purpose of illustrating our view of this case is not to be taken in any manner as prejudicial to his rights in the event there should be litigation between him and the executors. But it seems to us, on the record we have, that the executors should have brought this suit against Baskett in place of the

bank. The fact that the executors could not deliver the certificate of stock to Baskett for about ten days after the sale did not release Baskett from his obligation, created by the bid, to take the stock as it does not appear that time was an essential part of the contract of purchase.

Baskett had the right to insist that there should be delivered to him the identical shares of stock that he bought; that is, the shares of stock owned by Mrs. Wathen and which were represented by certificate No. 275. But within ten days after the sale the executors as shown by the record could have delivered to him this identical certificate. The pencil memorandum of the cashier showing that it had been cancelled, did not, so far as this record discloses, present any reason why the bank officers should not have erased, as they did, the word cancelled, or prevent them from tendering, as they did, the certificate representing the identical shares of stock that were sold.

There is no claim that the executors suffered any damage by the failure of the bank to promptly deliver this certificate except such as it is alleged arose from the refusal of Baskett to accept the stock under the circumstances stated, and the refusal of Baskett to take the stock under these circumstances did not make the bank liable for the value of the stock. It does not appear that Baskett sustained any damage by reason of the delay and the executors had a right to tender the stock to Baskett within a reasonable time after the sale, and this it appears they could have done.

If, however, it should develop that the bank could not and did not offer to deliver to the executor the certificate owned by Mrs. Wathen, and which Baskett bought, we would have another question. But there is no showing in the record that it did not and could not have delivered this certificate. The meager evidence as to the entries on the books and other circumstances throw little or no light on the question here involved, which is simply this: Did the bank, within ten days or two weeks after the sale, tender to the executor the certificate owned by Mrs. Wathen, and was the bank in a position to tender and deliver this certificate representing the ten shares of stock owned by her? If it did this, there should be a verdict for the bank.

On the other hand, this certificate had apparently been left by Mrs. Wathen in the care of the bank, and it was the duty of the bank to deliver it to her, or her representative, within a reasonable time after demand, and if the bank did not and could not deliver, within the time mentioned, the certificate owned by Mrs. Wathen representing the number of shares owned by her, then the executors should have damages for the loss they sustained on account of the failure of the bank to do this. The real issue in the case as we have outlined it was not submitted to the jury.

On the record before us, the plaintiffs wholly failed to make out a case, and the judgment is reversed, with directions for a new trial in conformity with this opinion.